UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                     11 cr. 120 (TPG)

   - against -

SEMEN DOMNITSER,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**SENTENCING MEMORANDUM**


                                      MARLON G. KIRTON, ESQ.
                                      Attorney for Defendant
                                      SEMEN DOMNITSER
                                      230 Park Ave., Suite 1000
                                      New York, New York 10169
                                          (646) 435-5519 ph

# *Marlon G. Kirton, P.C.*

---

| | | |
|---|---|---|
| *Marlon G. Kirton, Esq.* | *New York City:* | *Nassau County:* |
| | 230 Park Ave. Suite, 1000 | 175 Fulton Ave. Suite B-1 |
| _____ | New York, N.Y. 10169 | Hempstead, N.Y. 11550 |
| | Tel # (646) 435 - 5519 | Tel # (516) 833 - 5617 |
| | Fax # (212) 808 - 3020 | Fax # (516) 833 - 5620 |

August 30, 2013

VIA HAND DELIVERY

Hon. Thomas P. Griesa
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *United States v. Domnitser, 11 cr. 120 (TPG)*

Dear Judge Griesa:

I represent the defendant in the above referenced matter. The case is scheduled for sentence on September 10, 2013. Mr. Domnitser was convicted after a jury trial. The defense recommends a non guidelines sentence of six (6) months of home detention followed by a period of 2 years probation.

## SENTENCING FACTORS

The United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), focused on sentencing factors that impact the defendant. *Apprendi* requires that, "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. The Supreme Court extended the logic of *Apprendi*

2

in the landmark *Blakely* case. *Blakely v. Washington*, 124 S.Ct. 2531 (2004). The Court reviewed the constitutionality of a Washington State statute similar to the United States Sentencing Guidelines (U.S.S.G.). In *Blakely*, the trial court sentenced the defendant to more than three (3) years above the 53 month statutory maximum for his offense. The basis of the enhanced sentence was based on a finding made solely by a judge without input of the jury. *Blakely* held that the Washington State sentencing guidelines violated the defendant's Sixth Amendment right to a jury trial. The Court reasoned that the statutory maximum is any fact found by a jury or admitted by a defendant. However, *Blakely* did not expressly apply to the U.S.S.G. *Blakely, supra* at footnote 9.

The Supreme Court then applied its Sixth Amendment analysis to the U.S.S.G. *United States v. Booker*, 125 S.Ct. 738 (2005). In *Booker*, (also included is the companion case of *United States v. FanFan*) the Court applied the reasoning and holding of *Blakely* to the U.S.S.G. The Supreme Court held that a statutory maximum for purposes of the Sixth Amendment was any fact proved by a jury or admitted by a defendant. The Court reasoned that in order for the U.S.S.G. to be constitutional they had to be advisory rather than mandatory. 18 U.S.C. 3553(b) directs that the court, "shall impose a sentence of the kind and in the range" established by the Guidelines. *Booker, supra.* To the extent that this section of the statute was mandatory, the Court severed section 3553(b) and made the U.S.S.G. advisory rather than mandatory on federal judges. Furthermore, the Court also severed 18 U.S.C. 3742(e) as unconstitutional and held that the standard of review for appellate courts reviewing sentencing issues is "reasonableness." *Booker, supra*. Finally, Courts of Appeal were no longer entitled to review downward departures de novo,

the standard for review is reasonableness. *Booker, supra*.

The Second Circuit's first attempt at applying *Booker* came in *Crosby*. *United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005). In that case, the defendant plead guilty and was sentenced to ten(10) years. He appealed and the court had to decide whether or not his sentence was unreasonable in light of the *Booker* decision. The court remanded the case for the district court to apply the new standards in *Booker* but it gave guidance to that court as well as all district courts. It held that a district court must consider the U.S.S.G. when rendering a judgment. While acknowledging that the U.S.S.G. had become essentially advisory the court cautioned against returning to a pre-guidelines world of marked sentencing disparities. The Circuit gave a checklist for district courts to apply when implementing *Booker*, 1. The U.S.S.G. is no longer mandatory, 2. The district court must consider the U.S.S.G. as well as the other factors in section 3553(a), 3. The application of the U.S.S.G. will normally require determination of the applicable range for a particular case, 4. The district court after considering the U.S.S.G. and all of the applicable factors in section 3553(a) must decide whether to impose a guidelines sentence or a non-guidelines sentence and 5. The district court is entitled to find all of the facts appropriate for rendering either a guidelines or a non-guidelines sentence

## APPLICABLE GUIDELINES RANGE

Given the guidance of *Crosby*, it is necessary to determine the appropriate guidelines range for Mr. Domnitser. Mr. Domnitser was convicted of two (2) counts: 1. conspiracy to commit mail fraud in violation of 18 U.S.C. 1349. The charge carries a maximum of 20 years imprisonment, maximum of 3 years' supervised release, maximum fine of the greatest of $250,000 or twice the

gross gain or gross loss and a mandatory $100.00 special assessment; 2. mail fraud in violation of 18 U.S.C. 1341. The charge carries a maximum of 20 years imprisonment, a maximum of 3 years' supervised release, a maximum fine of $250,000 or twice the gross gain or gross loss and a $100 mandatory special assessment.

According to the pre sentence report, the defendant's offense level is 31 and the Criminal History Category was I.. His Guidelines range is 108-135 months.

## GUIDELINES SENTENCE

It is important to determine the Guidelines range for these offenses. For Count I the base offense level is 7. U.S.S.G.2B1.1(a)(1). 6 points are added because the loss amount is more than $30,000 but less than $70,000. U.S.S.G. 2B1.1(b)(D)(E).  The defense argues for this level because of the evidence adduced at trial. At trial, none of the Government cooperators worked with the defendant nor did they hear of any specific instance where he received money for any illegal activity. The evidence adduced at trial shows that he only received approximately $30,000 in illegal proceeds. His Guidelines range is 12-18 months.

## NON GUIDELINES SENTENCE

### FACTORS UNDER 18 U.S.C. 3553(a)

District courts may consider a number of factors when rendering a sentence including: 1. The history and characteristics of the defendant 3553(a)(1), and 2. To protect the public from future crimes of the defendant 3553(a)(2)( C ).

HISTORY AND CHARACTERISTICS OF DEFENDANT

I have included an extensive background history of Mr. Domnitser.[1] The balance of this section will focus on the trial and discovery evidence.

Mr. Domnitser was convicted after a jury trial. He maintains his innocence and will appeal. The Government called several witnesses at the trial. They called cooperators, employees of the Claims Conference (CC), a member of the Board of Directors of the Claims Conference. Outside counsel of the Claims Conference and a Holocaust expert. All of the witnesses that knew him personally, said that he was a hard worker, took very little vacation, was a diligent employee and was a capable supervisor. He spoke many different languages and was never cited for misconduct by the Claims Conference before he was terminated. Mr. Domnitser filed for and received unemployment benefits after he was terminated. The CC challenged his receipt of benefits and a hearing was held by an Administrative Law Judge.[2] Mr. Domnitser won the hearing.[3] The Court found that the CC did not show that he was properly terminated for cause.[4] The CC did not appeal the ruling and Mr. Domnitser continued to receive benefits. He received benefits until he found another job working for a different company. He held that job until his arrest in the instant indictment.

The Government cooperators testified, at trial, in great detail about their individual roles and

---

[1] See attached Exhibit A.

[2] See attached Exhibit B.

[3] See attached Exhibit C.

[4] Exhibit C.

about how the conspiracy worked. The witnesses all agreed to the following; 1. None of them agreed or worked with Mr. Domnitser to commit fraud; 2. None of them gave Mr. Domnitser any money to falsify an application (while he worked as a caseworker); 3. None of them gave Mr. Domnitser any money to approve a fraudulent application (while he was the head of the Article 2 and Hardship Funds); 4. None of them ever heard of a specific instance of Domnitser receiving money from anyone to approve a fraudulent transaction; 5. None of them ever saw or heard of Mr. Domnitser preparing a false application (while he was a case worker) and finally 6. None of the Government cooperators ever stated that they needed Mr. Domnitser in any way to commit their fraudulent acts. He did not have to perform any tasks to assist them in any way. [5]

The Government's witnesses (employees from the CC) testified that there were between 5000 and 6000 suspect applications that were part of the scheme. The Government provided proof that Mr. Domnitser was directly linked to 7 of those applications. The F.B.I. agent testified that there were about $30,000 of the proceeds of the fraud sent to Mr. Domnitser. Based on all the facts adduced at trial, Mr. Domnitser's loss amount is between $30,000 and $70,000. U.S.S.G. Application Note 3(A)(I). There is no proof that he was aware of nor caused any additional losses to the CC or the German Government.

## FUTURE CRIMES OF THE DEFENDANT

Mr. Domnitser is not likely to be involved in the criminal justice system in the future. He is married and has two (2) children. His living expenses ate very moderate and he lives a Spartan

---

[5] Trial Transcript (Tr.) 4/17/13 Tr. page 716 L 3- Tr. page 717 L25; 4/26/17, Tr. page 1510 L 19- Tr. page 1511 Line 14; 4/17/13, Tr. page 724 L 13- L 20; 4/18/13 Tr. page 731 L 24- Tr. page 732 L 1; 4/18/13 Tr. page 733 L 1 - L 4; 4/18/13 Tr. page 742 L 16 - Tr. page 743 L 8; 4/18/13 Tr. page 755 L 9 - L11.

lifestyle. He is currently not working because of this case. He is likely to remain in New York after this case is concluded. He looks forward to spending time with his family. He has always worked since he came to this country and will likely work again in the near future. He does not have a problem with drug or alcohol and as far as the defense is aware has no mental health issues other than depression. His depression is directly related to the charges and the conviction in this case. So long as he manages his depression, stays close to his family and finds employment, he is not likely to have any contact with the criminal justice system in the future.

## CONCLUSION

The defense recommends a non guidelines sentence of six (6) months home detention followed by a period of 2 years probation.


Sincerely,

s/Marlon G. Kirton
Marlon G. Kirton, Esq.


cc: Christopher Frey, Assistant United States Attorney (via electronic filing)
    Rebecca Rohr, Assistant United States Attorney (via electronic filing)